**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MARILYN DOMINGUE**                                                               **PLAINTIFF**

**V.**                                                                **NO. 4:18-CV-199-DMB-JMV**

**JANTRAN, INC.**                                                               **DEFENDANT**

**ORDER**

This admiralty case is before the Court on Jantran, Inc.'s motion for dispositive sanctions against Marilyn Domingue due to her admittedly false deposition answers and false discovery responses about her medical history. Doc. #32. Because the Court finds Domingue's false responses were willful and that lesser sanctions would not serve the best interests of justice, dismissal will be ordered.

**I
Procedural History**

On October 24, 2018, Marilyn Domingue filed an amended complaint against Jantran, Inc., her former employer, for injuries to her cervical spine and head suffered in a work-related February 28, 2017, boat accident on the Mississippi River. *See* Doc. #3 at PageID ##12–13. Domingue asserts personal injury claims under the Jones Act and claims related to maintenance and cure under common law. *See id.* at PageID ##11, 14–15.

On February 27, 2020, following an extended period of discovery,[1] Jantran filed a motion to dismiss Dominque's claims "pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the inherent power of the Federal District Court." Doc. #32. Jantran contends that dismissal is warranted based on Domingue's false answers to interrogatories and subsequent perjury during

---

[1] *See* Docs. #19, #28.

her deposition regarding her past medical treatment. *See* Doc. #31. The motion is fully briefed. Docs. #35, #38.

**II**
**Analysis**

As quoted above, Jantran's motion seeks a sanction of dismissal under Federal Rule of Civil Procedure 41 and the Court's inherent power to sanction. Doc. #32. It is unclear to what extent Rule 41, which authorizes dismissal for failure "to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order," applies to the conduct at issue here. To the extent Jantran's motion identifies no rule or court order which was violated, the Court concludes that dismissal under Rule 41 would be inappropriate.

A district court, however, has "the inherent authority to impose sanctions for misconduct and to protect the judicial process." *Snider v. L-3 Commc'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 678 (5th Cir. 2019). A court acting pursuant to this authority may sanction a party's perjury, *id*. at 678–79, and dishonest discovery responses, *see Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1182 (2017). To justify dismissal with prejudice under the Court's inherent power for such litigation conduct, there must be "a clear record of delay or contumacious conduct by the plaintiff," and "lesser sanctions would not serve the best interests of justice." *Snider*, 946 F.3d at 678–79. Ordinarily, when a party commits perjury, these requirements are met. *Id*. The intentional submission of a false interrogatory response may also satisfy this standard. *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 375–76 (4th Cir. 2013).

The Fifth Circuit does not appear to have definitively addressed the evidentiary standard for invoking the inherent sanction power. *See White v. Reg'l Adjustment Bureau, Inc.*, 647 F. App'x 410, 411 n.1 (5th Cir. 2016). However, in the context of dismissals, the standard is "arguably" clear and convincing. *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 845 (S.D.

Tex. 2016). Because the Court finds below that the clear and convincing standard has been satisfied, it need not decide whether a lower standard should or would apply.

### A. Relevant Facts

The facts underlying Jantran's motion are largely undisputed.[2] Medical records show that, beginning in 2013, Domingue began seeing Wael Karim, a neurologist, for hip and back pain. Doc. #31-6 at PageID ##370, 376–78. A November 14, 2013, MRI of Domingue's lower back ordered by Karim revealed "degenerative changes with disc bulging protrusion and a moderate left foraminal stenosis" at Domingue's L4-L5 vertebrae. *Id*. at PageID #378.

From 2013 through 2016, Domingue was treated by no fewer than five doctors[3] for a variety of conditions, including neuropathy, back pain, hip pain, ataxia and gait disturbance, and radiating pain in her arms and hands. Of relevance to Jantran's motion, a July 2, 2014, MRI of the cervical spine ordered by neurologist Peter Vizzi revealed spurring at C4-5 and stenosis at C5-6. Doc. #31-10 at PageID #410. The overall impression of the MRI was a "[m]ultilevel degenerative disc disease and spondylosis without focal disc herniation or high-grade central canal stenosis." *Id*.

Additionally, on July 8, 2014, Domingue reported to neurologist Ricardo Leoni that she was "hurting all over" and had been suffering from neck pain for the last six or seven years and

---

[2] In presenting the facts, Jantran cited generally to composite exhibits, leaving the Court to comb through pages of documents to find the proper precise cite. This practice is unacceptable and should not be repeated in the future. Further, both Jantran and Domingue failed to comply with Local Rule 7(b)(2)'s requirement that all exhibits be denominated by *both* an exhibit letter or number *and a meaningful description*. Violations of the local rules should not be repeated by either party and may subject the violating party's filing to being stricken or not considered. *See* L.U. Civ. R. 7(b)(4) ("Failure to timely submit the required motion documents may result in the denial of the motion.").

[3] *See* Doc. #31-6 at PageID #342 (treatment notes from Wael Karim); Doc. #31-7 at PageID #380 (treatment notes from Adam Perry); Doc. #31-9 at PageID #390 (treatment notes from Peter Vizzi); Doc. #31-11 at PageID #432 (treatment notes of Ricardo Leoni); Doc. #31-8 at PageID #383 (treatment notes from George Sobiesk). The notes from Domingue's visits with Leoni also report that she was being treated by another physician—Francine Manuel. Doc. #31-11 at PageID ##420, 436. No treatment notes from Manuel were provided.

3

that this resulted in numbness in both arms and hands. Doc. #31-11 at PageID ##419, 421. Domingue also reported to Leoni that she was involved in an accident at work caused by a fall from a bed. Doc. #31-11 at PageID #420. Also of relevance to Jantran's motion, on July 9, 2014, the Louisiana Department of Children and Family Services reported to Leoni that Domingue "is applying for or is receiving disability benefits due to the following conditions: neuropathy in legs and feet, 3 bulging disk lower lumbar, carpal tunnel in both wrist [sic], hammer toes, and hip problems." Doc. #31-12 at PageID #437.

On November 7, 2014, Domingue presented to the Emergency Department at the Bienville Medical Center, complaining that she "bent over and her back grabbed." Doc. #31-13. The notes from the evaluation state that Domingue has a history of "neck/back pain" and that the injury "hurt so bad it took her to the floor." *Id*.

In September of 2015, Domingue completed a medical history screening form for employment with Jantran. Doc. #31-2. On the form, Domingue reported no "injury or disease" as to her back or neck. *Id*. at PageID #308. Domingue also stated that she had never been "injured on or off the job," that she had only been hospitalized once (in 1984), and that she was only taking Adderall. *Id*. at PageID ##308–09.

Beginning November 2015[4] and running through December 5, 2016, Domingue's records with Karim include a diagnosis of "Memory Loss – Anterograde Amnesia." *See generally* Doc. #31-6.

On August 12, 2019, after the February 28, 2017, accident at issue here (and after the

---

[4] In their briefs, both parties argue the diagnosis first appeared in January 2015. These arguments appear to be caused by the fact that a January 4, 2016, diagnosis sheet appears immediately after notes from a January 4, 2015, office visit. *See* Doc. #31-6 at Page ID ##344–45. While it is possible the diagnosis sheet is misdated, this seems unlikely. Even if it were, for the reasons discussed below, the date of onset would not change the result here.

4

commencement of this lawsuit), Domingue presented to James W. Quillin, MP, complaining of "memory impairment and depression." Doc. #35-1. Quillin's notes from this visit state:

> Ms. Domingue returns today. I have reviewed her cognitive function studies. She shows low borderline intellectual functioning overall in memory and function scattered. Auditory memory is at the lower limits of the low normal range while visual memory is mildly impaired as is visual working memory. Immediate recall is at the upper limits of the mildly impaired range while delayed memory is at the lower limits of the borderline range. Her efficiency of learning is poor and is at least mildly impaired with respect to terminal recall and learning ability following a brief interference task. Perceptual function studies of the Bender-Gestalt reveal mild impairment. Executive dysfunction is also evident. She is quite depressed and primary care is managing her in this regard. She feels worthless and is dysphoric. Her pain is quite substantial and she is still awaiting clearance for an ACDF by her report. At this juncture, we will request a TOMM or symptom validity.

*Id*.

On July 31, 2019, Domingue responded to interrogatories propounded by Jantran. Doc. #31-1. Interrogatory Number 8 stated:

> Identify any and all healthcare providers, physicians, psychiatrists, psychologists, psychotherapists, social workers, health care professionals, or counselors you have consulted or who have rendered treatment to you in the last twenty (20) years and describe the condition or diagnosis rendered and the dates of such counseling and/or treatment, including but not limited to any consultation or treatment for emotional distress and/or physical injury.

Doc. #31-1 at PageID #292. Domingue responded to this interrogatory by identifying Karim, a nurse in Arcadia, Louisiana, named Ashley Thomas, and an unnamed "MD [who] removed Baker's cyst on her back." *Id*. Interrogatory Number 10 stated:

> Have you ever sustained an injury or experienced [sic] either before or after the February 28, 2017 incident, similar to those alleged to have occurred as a result of this accident? If so, please state the nature of the injury and/or medical condition(s), the name and address of all physicians or other health care providers who treated you for those injuries and/or medical condition(s) and the name and addresses of any hospitals in which you were confined during such treatment.

*Id*. at PageID #293. Domingue responded to this interrogatory in the negative. *Id*.

On February 12, 2020, Domingue appeared for a deposition by Jantran. Doc. #31-3. At

5

her deposition, Domingue testified that (1) she could only remember seeing the healthcare providers identified in her interrogatory response and that she does not "go to the doctor much," *id*. at PageID #334; (2) her memory of events prior to the accident is "good," *id*. at PageID #311; (3) due to the accident, she has pain and numbness radiating from her neck into her arms and hands and that she did not have those "neck problems" before the accident, *id*. at PageID #332; (4) in 2012, she received social security disability benefits for "Fibromyalgia and neuropathy," *id*. at PageID #333; and (5) her balance and gait problems are "related to the accident," *id*.

### B. Contumacious Conduct

While misstatements in a deposition and false discovery responses are always improper, to be sanctionable under the Court's inherent authority, the falsehoods must be contumacious, that is, knowingly false. *Snider*, 946 F.3d at 678–79. Jantran contends that Domingue gave knowingly false testimony and/or provided false discovery responses when she (1) failed to identify her treating physicians other than Karim; (2) stated in both her discovery responses and deposition testimony that she had not previously experienced the neck and balance problems complained of in this case; and (3) stated in her deposition testimony that her social security benefits were related only to fibromyalgia and neuropathy. Doc. #31 at 10–15.

Domingue does not dispute that she made false statements but contends that her conduct "was not contumacious as she suffers from cognitive dysfunction and long-standing memory problems."[5] Doc. #35 at PageID #572. Specifically, Domingue points to the notations of anterograde amnesia in her medical records and to the August 12, 2019, assessment reflecting

---

[5] Domingue also argues that her underlying medical records should be excluded based on Jantran's failure to produce them before her deposition. Doc. #35 at PageID ##574–75. This argument, which was presented by Domingue in a separate motion for sanctions against Jantran, Doc. #33, was correctly rejected by United States Magistrate Judge Jane M. Virden in a May 6, 2020, order. Doc. #43.

cognitive disfunction. *Id*. at PageID ##573–74. Domingue also argues that if she had been trying to hide her prior medical history, she would not have disclosed her treatment by Karim. *Id*. at PageID #573.

Jantran replies that because anterograde amnesia only impacts the ability to create *new* memories, it should not have impacted Domingue's ability to recall her previous medical treatment. Doc. #38 at 1–2. Jantran further argues that Quillin found Domingue's "ability for immediate recall to be only mildly impaired" and only "borderline" impairment of delayed recall and that even these diagnoses should be tempered by the fact that he was skeptical of the diagnoses, as evidenced by the fact that he ordered a separate test to "establish symptom validity." *Id*. at 2. Finally, Jantran submits that Domingue's claims of memory loss are undermined by the fact that she testified she had no memory issues and the fact that an August 14, 2018, MRI of her brain reflected "no structural pathology." *Id*. at 3 (citing Doc. #38-2).

As an initial matter, the Court declines to give much credit to Domingue for identifying Karim as a treating physician. Provision of a partial list in response to a request for full disclosure does not preclude a finding of perjury. *United States v. Greulich*, 22 F. App'x 807, 808 (9th Cir. 2001). Indeed, Domingue's ability to recall seeing Karim suggests a capacity to recall treatment during the time period she was seeing other physicians.

As to the diagnosis of anterograde amnesia, anterograde amnesia is "amnesia in reference to events occurring *after* the trauma or disease that caused the condition." *Anterograde Amnesia*, STEDMAN'S MEDICAL DICTIONARY 29020 (emphasis added).[6] It follows that this condition, which was not documented until 2015, would not have impacted Domingue's ability to recall the various

---

[6] *See Roth v. 2810026 Canada Ltd.,* No. 13-CV-901, 2017 WL 4310689, at *22 n.36 (W.D.N.Y. Sep. 28, 2017) (court may take judicial notice of "well-established" medical facts) (collecting cases).

7

medical treatment and conditions which arose before 2015. Because the bulk of Domingue's medical conditions and treatment occurred before 2015, the 2015 diagnoses of anterograde amnesia does not undermine a finding of willfulness with respect to Domingue's false statements.

Finally, the Court agrees with Jantran that the 2019 findings related to Domingue's memory recall do not undercut a finding of willfulness. While Domingue was diagnosed with "low borderline intellectual functioning overall in memory," Doc. #35-1 at PageID #577, there is nothing to indicate that this deficiency would have precluded Domingue from recalling years of regular treatment from multiple physicians. Indeed, during her deposition, Domingue recalled attending a 2015 pre-employment screening at the Family Medical Center in Greenville, Mississippi (although she could not recall what happened at the screening). Doc. #31-3 at PageID #317. Domingue was also able to recall details of various medical visits following her accident (facts which supported her case). *Id*. at 49–52. Additionally, based on the notation that the examiner intended to administer an examination to confirm the validity of the symptoms, it appears that the examiner had concerns about the validity of the diagnoses. Doc. #35-1 at PageID #577. And, most important, Domingue testified unambiguously that her memory regarding times before the accident was "good." Doc. #31-3 at PageID #311.

The facts of this case are similar to those in *Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004). In *Hull*, the plaintiff "did not reveal, in response to questions fairly seeking this information, facts about his prior injuries and treatment." 356 F.3d at 100. The plaintiff, who was diagnosed with post-concussion syndrome, complained of "poor memory." *Id*. In affirming a finding of willfulness, the First Circuit noted that the omitted information was "serious and sufficiently related to the current claim of injuries" to make it "unlikely" that it would have been forgotten. *Id*. at 101. The First Circuit further observed that the plaintiff's misstatements were

8

part of "broader pattern of deceit," which included the withholding of medical information from his own doctor, and that the plaintiff had a "self-interest to enlarge his potential damages" so as raise an "inference of deliberate deceit." *Id*. Ultimately, the First Circuit held:

> It is easy enough to forget details of one's past; and possibly [the plaintiff] did suffer some impairment in the fall affecting his memory. But the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless.

*Id*. at 101–02.

Here, as in *Hull*, there is some evidence that Domingue suffers from some memory loss. However, the impact of this purported memory loss seems particularly convenient. During her deposition, Domingue was able to recall details of previous medical visits, just not the ones which would have undermined her claims. Furthermore, Domingue's misstatements during discovery are consistent with her omission of her previous injury history from her employment application with Jantran. And, as with the plaintiff in *Hull*, Domingue undoubtedly had a motivation to conceal her previous injury and medical history. For all these reasons, the Court concludes that clear and convincing evidence supports a finding that Domingue willfully misrepresented her medical history in her responses to the interrogatories and during her deposition. Accordingly, the contumacious conduct requirement has been satisfied.

### C. Lesser Sanctions

Even when a court finds contumacious conduct, it must also find that lesser sanctions would not serve the best interests of justice. *Snider*, 946 F.3d at 679. "Lesser sanctions include assessments of fines, costs, or damages against the plaintiff, conditional dismissal, dismissal without prejudice, and explicit warnings." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 360 (5th Cir. 2020). While the best interests of justice include consideration of the impact on

9

the instant case, *id*., a court may also consider the need to deter similar conduct in future cases, *In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018).

The Court first finds that lesser sanctions would not adequately protect future proceedings in this case because Domingue's "misconduct demonstrates that [s]he has no regard for this Court's authority or the integrity of the judicial process and that [s]he will stop at nothing to win this case."[7] *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 850 (S.D. Tex. 2016). The Court further finds that because Domingue's conduct "went to the heart of the case" and that "since not everyone will be caught," the severe sanction of dismissal is necessary to deter similar conduct in the future. *Hull*, 356 F.3d at 102–03; *see Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76 (5th Cir. 2011) (affirming perjury dismissal based on "the deterrence rationale in *Hull*"). Accordingly, because lesser sanctions would not serve the best interests of justice, dismissal with prejudice is warranted.

### III
### Conclusion

The sanction of dismissal is a harsh one. But, unfortunately, it is warranted by the circumstances here. This Court will neither overlook nor endorse willful deceit of the kind exposed in this case. To do otherwise would be to erode the very foundations on which the discovery process in our courts is based. For these reasons, and those explained above, Jantran's motion for dispositive sanctions against Dominque [32] is **GRANTED**. This case is **DISMISSED with prejudice**. Accordingly, Jantran's motion for partial summary judgment [30] is **DENIED as**

---

[7] In reaching this conclusion, the Court acknowledges that because Jantran had the relevant information at the time of the deposition and discovery responses, Domingue received no benefit from her misstatements. This fact does not, however, preclude sanctions. Rather, a party need not benefit from her perjury to be sanctioned for it. *See generally ABF Freight Sys., Inc. v. Nat'l Lab. Rels. Bd.*, 510 U.S. 317, 329–30 (1994) (Scalia, J., concurring in the judgment) ("The principle that a perjurer should not be rewarded with a judgment—even a judgment otherwise deserved—where there is discretion to deny it, has a long and sensible tradition in the common law.").

10

**moot**.  A final judgment will issue separately.

    **SO ORDERED**, this 21st day of September, 2020.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**
